CSD 1171 [04/06/11]
Name, Address, Telephone No. & I.D. No.

Craig S. Trenton SBN 165973
2150 Fourth Avenue
San Diego CA 92101
619-544-0669
fax 619-236-1148
Attorney for Debtors

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
Kim, Larry Jinuk and Young Hee

BANKRUPTCY NO. 11-7381-MM13

Tax I.D.(EIN)#:_____/S.S.#:XXX-XX-_____   Debtor.

## DEBTOR'S MOTION TO VALUE REAL PROPERTY, TREAT CLAIM AS UNSECURED AND AVOID JUNIOR LIEN OF
### Bank of America, N.A.

### (Affected Lien Holder)

**A.    Lien, Claim and Property at Issue:**    In connection with confirmation of the Chapter 13 Plan dated 5/16/2011 ("Plan"),  Debtor moves to value and avoid the junior deed of trust, mortgage or other encumbrance of _____ Bank of America, N.A.

("Affected Lien Holder"), recorded on _____10/16/2007_____ as instrument number _____2007-0664523_____

in the official records of _____San Diego County_____ ("Affected Lien") encumbering the real property commonly known as

13464 Cool Lake Way, San Diego, CA 92128

and more fully described as *(insert legal description or attach exhibit)*: A _____

_____ ("Property").

The Property:

☑  Is the Debtor's primary residence; or

☐  Is NOT the Debtor's primary residence.

Associated Claim:

☑  The Affected Lien Holder filed a proof of claim on _____6/6/2011_____ assigned Claim No. ____5____,

which is associated with the Affected Lien ("Claim"); or

☐  As of the date of this Motion, Affected Lien Holder has not filed a proof of claim associated with the Affected Lien.

**Use this form only in cases where the debtor IS eligible for discharge under 11 U.S.C. § 1328(f).**
CSD 1171

CSD 1171 (Page 2) [04/06/11]

Pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2), the Affected Lien may be avoided upon completion of Plan payments after confirmation of the Plan. The Claim will be treated in the Plan as an unsecured claim, and may be satisfied by discharge or other order of the Court.

**B.**     **Petition Date:**___5/1/2011___

**C.**     **The Motion is timely under Local Bankruptcy Rule 3015-10(c) as follows:**

☐     The Motion is filed within twenty-eight days after the Claim was filed;

☐     The Affected Lien Holder did not file a proof of claim, but the Motion is filed within twenty-eight days after the claims bar date of _____; or

☑     The Court entered an order on _____7/12/2011_____ setting ___7/18/2011___ as the deadline to file the Motion.

**D.**     **Service of the Motion on the Affected Lien Holder complies with Fed. R. Bankr. P. 7004 ("Rule 7004") as follows:**

☑ Service was accomplished under Rule 7004(h):

☑     By certified mail addressed to a specifically named officer of the institution;

☐     Other:

OR

☐     The Affected Lien Holder is **not** an Insured Depository Institution, as defined in section 3 of the Federal Deposit Insurance Act and 11 U.S.C. § 101(35), and service was made by first-class mail:

☑     Upon an individual under Rule 7004(b)(1);

☐     Upon a domestic or foreign corporation or upon a partnership or other unincorporated association under Rule 7004(b)(3); or

☐     Other:

**E.**     **Service on Proof Claim Address:**

☑     Affected Lien Holder was served at the address designated for receipt of notices and to the attention of the person filing the Claim; or

☐     As of the date of this Motion, Affected Lien Holder has *not* filed a proof of claim.

**F.**     **Value of the Property is:**___510,000.00___, as of ___7/1/2011___. This opinion of value is based on the following admissible evidence:

☑     Declaration of Appraiser or Real Estate Broker

☐     Declaration of Owner based on personal familiarity with the Property, or

☐     Other:

and is attached as Exhibit _____B_____.

CSD 1171

CSD 1171 (Page 3) [04/06/11]

G.    **Senior Debt:**  The deeds of trust, mortgages or other liens encumbering the Property which are senior in priority to the Affected Lien ("Senior Debt"):

| Creditor | Priority | Balance Owed/Date |
|---|---|---|
| Bank of America, N.A. | 1 | 548,000.00 / 10/18/2010 |
|  |  |  |

This information is supported by admissible evidence (*e.g.* Proof of Claim attached as exhibit or a recent statement from the Creditor, submitted with the Debtor's declaration)

**Total Senior Debt:**  ____548,000.00____

**Prayer:**

WHEREFORE, Debtor prays that this Court issue an Order which finds and determines that:

1.    The Property is valued at no more than $_____510,000.00_____;

2.    The balance owing on the Senior Debt exceeds the value of the Property and the Affected Lien is wholly unsecured and the Claim may be satisfied through the Plan as an unsecured claim;

3.    The Claim will be paid pursuant to the Plan as a non-priority general unsecured claim to the extent allowed.  If Affected Lien Holder has not filed a proof of claim, and the deadline to file unsecured claims has expired, Affected Lien Holder has an extension of the deadline until 60 days after the date of entry of the Order;

4.    Upon completion of payments under the confirmed Plan, and entry of the resulting discharge, the Affected Lien will be deemed fully satisfied, and Affected Lien Holder is required to reconvey and release the Affected Lien.  If the Affected Lien Holder fails to release the Affected Lien within the time required by applicable state law, the Debtor may file a motion requesting an order to extinguish the Affected Lien;

5.    If this case is dismissed or converted to Chapter 7, the Affected Lien Holder shall retain its lien for the full amount due under the corresponding note;

6.    Debtor's counsel is authorized to add, in connection with Plan Confirmation, the guideline fee as reflected in the Rights and Responsibilities Statement for motions of this type and costs subject to proof, or additional fees through fee application.

7.    ☐    See attached continuation page for additional provisions.


Dated:____7/15/2011____

                                        /s/ Craig S. Trenton_____
                                        [Attorney for] Debtor

5635



# SCHEDULE A

THE FOLLOWING DESCRIBED PROPERTY IN SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA:

LOT 78, OF NORTH CREEK UNIT NO. 1, ACCORDING TO THE MAP THEREOF NO. 11062 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

PROPERTY ADDRESS: 13464 COOL LAKE WAY

PARCEL ID: 316-153-24-00

## LL APPRAISAL SERVICES
### REAL ESTATE VALUATION SERVICE

File No. 070111COOLLAKE

APPRAISAL OF



LOCATED AT:

13464 COOL LAKE WAY
SAN DIEGO, CA  92128

FOR:

LARRY KIM
13464 COOL LAKE WAY
SAN DIEGO 92128

BORROWER:

NONE

AS OF:

JULY 1, 2011

BY:

LAURIE LUTTON
LL APPRAISAL SERVICES

LLUTTON@SAN.RR.COM



LL APPRAISAL SERVICES
REAL ESTATE VALUATION SERVICE

File No. 070111COOLLAKE

07/01/2011


LARRY KIM
13464 COOL LAKE WAY
SAN DIEGO  92128


File Number:    070111COOLLAKE


In accordance with your request, I have appraised the real property at:

13464 COOL LAKE WAY
SAN DIEGO, CA  92128


The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   JULY 1, 2011                          is:

$510,000
FIVE HUNDRED TEN THOUSAND  DOLLARS


The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.


THANK YOU.

LAURIE LUTTON
LL APPRAISAL SERVICES
LLUTTON@SAN.RR.COM

619-920-0709 OFFICE


858-408-3281 FAX

LL APPRAISAL SERVICES

# Uniform Residential Appraisal Report
File No. 070111COOLLAKE

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 13464 COOL LAKE WAY | City SAN DIEGO   State CA   Zip Code 92128 |
| Borrower NONE | Owner of Public Record SG GLOBAL & CHANG HWAN SEO   County SAN DIEGO |

Legal Description LOT 78 TR 11062

Assessor's Parcel # 316-153-24-00    Tax Year 10-11    R.E. Taxes $ 5,635

Neighborhood Name RANCHO BERNARDO    Map Reference 1189-H4    Census Tract 0170.39

Occupant [X] Owner [ ] Tenant [ ] Vacant   Special Assessments $ N/A   [X] PUD   HOA$ 35.00   [ ] per year [X] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) N/A

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) ESTIMATE OF VALUE FOR BANKRUPTCY PURPOSES

Lender/Client LARRY KIM   Address 13464 COOL LAKE WAY, SAN DIEGO, CA, 92128

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). THE SUBJECT HAS NOT BEEN LISTED ON THE LOCAL MLS IN THE PAST TWELVE MONTHS.

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. NOT A PURCHASE

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record? [X] Yes [ ] No   Data Source(s) REALIST

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid.   N/A    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit 70% % | |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 364 Low 21 | | 2-4 Unit 5% % | |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 595 High 25 | | Multi-Family 5% % | |
| | | | | | | 520 Pred. 22 | | Commercial 5% % | |
| | | | | | | | | Other VAC 15% % | |

Neighborhood Boundaries NORTH OF POWAY ROAD, SOUTH OF TED WILLIAMS PARKWAY, EAST OF INTERSTATE 15 AND WEST OF EAGLES CREEK COURT IN THE CITY/COUNTY OF SAN DIEGO.

Neighborhood Description THE SUBJECT IS IN A NEIGHBORHOOD OF GOOD QUALITY SINGLE FAMILY RESIDENCES WITHIN GOOD PROXIMITY TO EMPLOYMENT, SCHOOLS, SHOPPING, AND RECREATION. EMPLOYMENT STABILITY APPEARS TO BE GOOD. THERE ARE NO ADVERSE INFLUENCES THAT WOULD NEGATIVELY AFFECT THE MARKETABILITY OF THE SUBJECT.

Market Conditions (including support for the above conclusions) SEE ATTACHED ADDENDUM.

| | |
|---|---|
| Dimensions 43 X 152 X 48 X 153 | Area 6,926 +/- SF   Shape RECTANGULAR   View RESIDENTIAL |

Specific Zoning Classification R1   Zoning Description SINGLE FAMILY RESIDENTIAL

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) N/A

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe. N/A

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 0602951354-F   FEMA Map Date 06/19/1997

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No   If No, describe. N/A

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe. NO APPARENT ADVERSE EASEMENTS OR ENCROACHMENTS NOTED ON INSPECTION WHICH SHOULD HAVE A NEGATIVE EFFECT ON THE SUBJECT MARKETABILITY.

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls CONCRETE/AVG | Floors WD/TL/CPT/AVG |
| # of Stories 2 | [ ] Full Basement [ ] Partial Basement | Exterior Walls STUCCO/AVG | Walls DRYWALL/AVG |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area 0.0000 sq. ft. | Roof Surface TILE/AVG | Trim/Finish WOOD/AVG |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts ALUMIN/AVG | Bath Floor WD/TL/CPT/AV |
| Design (Style) TRADITIONAL | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type ALUMIN/AVG | Bath Wainscot TILE/AVG |
| Year Built 1985 | Evidence of [ ] Infestation | Storm Sash/Insulated NONE/NONE | Car Storage [ ] None |
| Effective Age (Yrs) 26 YEARS | [ ] Dampness [ ] Settlement | Screens YES/AVG | [X] Driveway # of Cars 2 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] WoodStove(s) # | Driveway Surface CONCRETE |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel GAS | [X] Fireplace(s) # 1 [X] Fence WD/MTL | [X] Garage # of Cars 2 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck PAT [ ] Porch | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in |
| Appliances [P] Refrigerator [X] Range/Oven | [ ] Dishwasher [P] Disposal [P] Microwave | [P] Washer/Dryer [ ] Other (describe) | |

Finished area above grade contains: 7 Rooms 4 Bedrooms 2.5 Bath(s) 1,739 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). SEE ATTACHED ADDENDUM.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THE SUBJECT SHOWS TYPICAL AGE LIFE DEPRECIATION DUE TO AVERAGE PROPERTY MAINTENANCE WITH AVERAGE PROPERTY UPGRADING. THE FLOORING ( TILE, WOOD ) IS OF AVERAGE QUALITY AND IS IN AVERAGE CONDITION. THE KITCHEN AND BATHS ARE IN AVERAGE CONDITION. THE SUBJECT HAS A 2 CAR GARAGE, FIREPLACE, AND PATIO. THE CARPET FLOORING NEEDS REPLACEMENT AND THERE ARE SOME BROKEN WINDOWS THAT NEED REPLACEMENT. SEE ATTACHED ADDENDUM.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No   If Yes, describe. N/A

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe. N/A

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 13464 COOL LAKE WAY | 11131 MORNING CREEK DR N | | 11039 TWIN POND TER | | 10993 COLD SPRINGS CT | |
| Address SAN DIEGO | | SAN DIEGO, CA, 92128 | | SAN DIEGO, CA, 92128 | | SAN DIEGO, CA, 92128 | |
| Proximity to Subject | | 0.24 miles SSE | | 0.27 miles SSE | | 0.24 miles S | |
| Sale Price | $ N/A | $ 480,000 | | $ 520,000 | | $ 535,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 262.73 sq.ft. | | $ 274.70 sq.ft. | | $ 286.40 sq.ft. | |
| Data Source(s) | INSPECTION | MLS/REALIST | | MLS/REALIST | | MLS/REALIST | |
| Verification Source(s) | REALIST | 316-155-43-00 DOC # 123796 | | 316-155-28-00 DOC # 26612 | | 316-154-07-00 DOC # 186758 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | CONVENTIONAL | | CONVENTIONAL | | CONVENTIONAL | |
| Concessions | | NRCC | -14,400 | NONE | | NONE | |
| Date of Sale/Time | N/A | 03/08/2011 | | 01/14/2011 | | 04/11/2011 | |
| Location | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 6,926 +/- SF | 7,100 +/- SF | | 9,530 +/- SF | | 6,743 +/- SF | |
| View | RESIDENTIAL | SIMILAR | | SIMILAR | | SIMILAR | |
| Design (Style) | TRADITIONAL | TRADITIONAL | | SIMILAR | | TRADITIONAL | |
| Quality of Construction | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Actual Age | 26 YEARS | 25 YEARS | | 24 YEARS | | 22 YEARS | |
| Condition | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Above Grade | Total 7 Bdrms 4 Baths 2.5 | Total 7 Bdrms 4 Baths 2.5 | | Total 7 Bdrms 4 Baths 3 | -1,500 | Total 7 Bdrms 4 Baths 2.5 | |
| Room Count | | | | | | | |
| Gross Living Area | 40  1,739 sq.ft. | 1,827 sq.ft. | | 1,893 sq.ft. | -6,000 | 1,868 sq.ft. | -5,000 |
| Basement & Finished | ORG LIST PRICE: | $549,000 | | $541,286 | | $565,000 | |
| Rooms Below Grade | MKT EXP TIME: | DAYS: 312 | | DAYS: 86 | | DAYS: 41 | |
| Functional Utility | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Heating/Cooling | FAU/CENTRAL | FAU/CENTRAL | | FAU/CENTRAL | | FAU/CENTRAL | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| UPGRADES | AVERAGE | SIMILAR | | SIMILAR | | SUPERIOR | -20,000 |
| 1 FIREPLACE | 1 FIREPLACE | 1 FIREPLACE | | 1 FIREPLACE | | 1 FIREPLACE | |
| POOL | NONE | POOL | -10,000 | NONE | | NONE | |
| Net Adjustment (Total) | | + [X] - $ | 24,400 | + [X] - $ | 7,500 | + [X] - $ | 25,000 |
| Adjusted Sale Price | | Net Adj. -5.15% | | Net Adj. -1.49% | | Net Adj. -4.7% % | |
| of Comparables | | Gross Adj. 5.1% % $ | 455,600 | Gross Adj. 1.4% % $ | 512,500 | Gross Adj. 4.7% % $ | 510,000 |

I [X] did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain   MLS/REALIST

My research [X] did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   REALIST

My research [X] did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   REALIST

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/09/2006 | 02/26/2007 | 09/08/2009 | 05/10/2002 |
| Price of Prior Sale/Transfer | $565,000 | 560000 | NOT DISCLOSED | NOT DISCLOSED |
| Data Source(s) | REALIST DOC # 163971 | REALIST DOC | REALIST DOC # 500553 | REALIST DOC # 400271 |
| Effective Date of Data Source(s) | 07/01/2011 | 07/01/2011 | 07/01/2011 | 07/01/2011 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECTS PREVIOUS SALE AS NOTED WITH THE MOST RECENT TRANSFER DATED 08/16/2010 IN THE AMOUNT OF $523,593, REALIST DOC # 163973 AS NOTICE OF TRUSTEE'S SALE.  COMPARABLE TWO PRIOR SALE/ TRANSFER SHOWS MOST CURRENT MARKET TRENDS AND SUBSEQUENT IMPROVEMENTS. COMPARABLES ONE AND THREE HAVE HAD NO SALES OR TRANSFERS WITHIN THE PAST YEAR.

Summary of Sales Comparison Approach.   ALL COMPARABLES WERE GIVEN EQUAL CONSIDERATION IN THE FINAL ESTIMATE OF VALUE. COMPARABLE FOUR IS THE MOST RECENT SALE. COMPARABLES TWO AND THREE HAVE THE FEWEST GROSS ADJUSTMENTS.
COMPARABLE FOUR SHOWS SUPPORT FOR CURRENT MARKET TRENDS AND SUBSEQUENT IMPROVEMENTS.

Indicated Value by Sales Comparison Approach $   510,000

Indicated Value by: Sales Comparison Approach $510,000   Cost Approach (if developed) $ 498,700   Income Approach (if developed) $ N/A

IN THE FINAL RECONCILIATION OF VALUE MOST EMPHASIS WAS PLACED ON THE DIRECT SALES COMPARISON APPROACH. THE COST APPROACH WAS SUPPORTIVE. THERE WAS INSUFFICIENT DATA TO DEVELOP THE INCOME APPROACH. SEE ATTACHED ADDENDUM.

This appraisal is made [X] "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   ALL COMPARABLE SALES ARE CERTIFIED CLOSED. THIS WAS VERIFIED BY A COMPUTER SEARCH OF THE COUNTY RECORDS. SEE ATTACHED ADDENDUM.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   510,000
as of   07/01/2011   , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                Produced using ACI software, 800.234.8727 www.aciweb.com                Fannie Mae Form 1004 March 2005
                                              Page 2 of 6                                                            1004_06 09/0909

LL Appraisal Services

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

**ADDITIONAL COMMENTS**

CLARIFICATION OF INTENDED USE AND INTENDED USER:

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  THERE WERE NO RECENT SIMILAR LAND SALES IN THE AREA. SITE VALUE ESTIMATED USING THE LAND EXTRACTION METHOD OF THE SUBJECT AND COMPARABLES TO ARRIVE AT A TYPICAL % OF TOTAL VALUE THE TYPICAL SITE IS IN THE NEIGHBORHOOD.

**COST APPROACH**

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW

| | |
|---|---|
| OPINION OF SITE VALUE | = $ 240,000 |
| Dwelling 1,739 Sq. Ft. @ $ 165.00 | = $ 286,935 |
| Sq. Ft. @ $ | = $ 0 |
| Garage/Carport 400 Sq. Ft. @ $ 55.00 | = $ 22,000 |
| Total Estimate of Cost-New | = $ 308,935 |
| Less 75 Physical Functional External | |
| Depreciation $70,265 | = $ ( 70,265 ) |
| Depreciated Cost of Improvements | = $ 238,670 |
| "As-Is" Value of Site Improvements | = $ 20,000 |
| INDICATED VALUE BY COST APPROACH | = $ 498,700 |

Source of cost data MARSHALL & SWIFT RESIDENTIAL COST HB
Quality rating from cost service AVG   Effective date of cost data 2011
Comments on Cost Approach (gross living area calculations, depreciation, etc.) THE FLOOR AREA BELOW IS CONSIDERED APPROXIMATE. MINOR DEVIATIONS IN SQUARE FOOTING ARE OF LITTLE OR NO VALUE CONSEQUENCE. LAND TO IMPROVEMENT RATIO IS TYPICAL FOR THIS AREA. REPRODUCTION COST NEW IS FROM MARSHALL & SWIFT. THE IMPROVEMENT DIFFERENTIAL WAS ADJUSTED $40 PER SQ. FT. THE REMAINING ECONOMIC LIFE OF THE SUBJECT IS 35-40 YEARS.

Estimated Remaining Economic Life (HUD and VA only) 49 Years

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

Estimated Monthly Market Rent $ N/A X Gross Rent Multiplier N/A = $ 0 Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM) N/A

### PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [X] No   Unit type(s) [X] Detached [ ] Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal name of project N/A
Total number of phases N/A   Total number of units N/A   Total number of units sold N/A
Total number of units rented N/A   Total number of units for sale N/A   Data source(s) N/A
Was the project created by the conversion of an existing building(s) into a PUD? [ ] Yes [ ] No   If Yes, date of conversion.
Does the project contain any multi-dwelling units? [ ] Yes [ ] No   Data source(s) N/A
Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No   If No, describe the status of completion. N/A

Are the common elements leased to or by the Homeowners' Association? [ ] Yes [X] No   If Yes, describe the rental terms and options. N/A

Describe common elements and recreational facilities. NONE

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1.   I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.   I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.   The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.   This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.   If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and/or video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if  a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name LAURIE LUTTON
Company Name LL APPRAISAL SERVICES
Company Address SAN DIEGO
SAN DIEGO
Telephone Number 619-920-0709
Email Address LLUTTON@SAN.RR.COM
Date of Signature and Report 07/01/2011
Effective Date of Appraisal 07/01/2011
State Certification #
or State License # AL039652
or Other (describe) _____ State # CA
State CA
Expiration Date of Certification or License 02/29/2012

ADDRESS OF PROPERTY APPRAISED
13464 COOL LAKE WAY
SAN DIEGO, CA  92128

APPRAISED VALUE OF SUBJECT PROPERTY $       510,000

LENDER/CLIENT
Name LARRY KIM
Company Name LARRY KIM
Company Address 13464 COOL LAKE WAY
SAN DIEGO 92128
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

Freddie Mac Form 70 March 2005          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 1004 March 2005
                                        Page 6 of 6                                                        1004_05 090909

LL Appraisal Services

LL APPRAISAL SERVICES

## Uniform Residential Appraisal Report

File No. 070111COOLLAKE

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 13464 COOL LAKE WAY SAN DIEGO | 14034 STONEY GATE PL SAN DIEGO, CA, 92128 | | | | | |
| Proximity to Subject | | 0.90 miles NE | | | | | |
| Sale Price | $ N/A | $ 499,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 262.77 sq. ft. | | $ sq. ft. | | $ 0.00 sq. ft. | |
| Data Source(s) | INSPECTION | MLS/REALIST | | | | | |
| Verification Source(s) | REALIST | 313-642-21-00 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | CONV. | | | | | |
| Concessions | N/A | NONE | | | | | |
| Date of Sale/Time | N/A | CONTINGENT | | | | | |
| Location | AVERAGE | SIMILAR | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 6,926 +/- SF | 3,659 +/- SF | | | | | |
| View | RESIDENTIAL | SIMILAR | | | | | |
| Design (Style) | TRADITIONAL | TRADITIONAL | | | | | |
| Quality of Construction | AVERAGE | SIMILAR | | | | | |
| Actual Age | 26 YEARS | 22 YEARS | | | | | |
| Condition | AVERAGE | SIMILAR | | | | | |
| Above Grade | Total 7 Bdrms 4 Baths 2.5 | Total 7 Bdrms 4 Baths 2.5 | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Gross Living Area | 40 1,739 sq. ft. | 1,899 sq. ft. | -6,000 | sq. ft. | | sq. ft. | |
| Basement & Finished | ORG LIST PRICE: $499,000 | | | | | | |
| Rooms Below Grade | MKT EXP TIME: | DAYS: 142 + | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | | | | |
| Heating/Cooling | FAU/CENTRAL | FAU/CENTRAL | | | | | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | | | | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | | | | |
| Porch/Patio/Deck | PATIO | PATIO | | | | | |
| UPGRADES | AVERAGE | SL SUPERIOR | -10,000 | | | | |
| 1 FIREPLACE | 1 FIREPLACE | 1 FIREPLACE | | | | | |
| POOL | NONE | NONE | | | | | |
| Net Adjustment (Total) | | [ ]+ [X]- $ | 16,000 | [X]+ [ ]- $ | 0 | [X]+ [ ]- $ | 0 |
| Adjusted Sale Price | | Net Adj. -3.2%% | | Net Adj. 0.0% | | Net Adj. 0.0% | |
| of Comparables | | Gross Adj. 3.2% % $ | 483,000 | Gross Adj. 0.0% $ | 0 | Gross Adj. 0.0% $ | 0 |
| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
| Date of Prior Sale/Transfer | 03/09/2006 | 03/07/2007 | | | | | |
| Price of Prior Sale/Transfer | $565,000 | 610000 | | | | | |
| Data Source(s) | REALIST DOC # 163971 | REALIST DOC # 155864 | | | | | |
| Effective Date of Data Source(s) | 07/01/2011 | 07/01/2011 | | | | | |

Summary of Sales Comparison Approach   N/A

ADDENDUM

| | |
|---|---|
| Borrower: NONE | File No.: 070111COOLLAKE |
| Property Address: 13464 COOL LAKE WAY | Case No.: |
| City: SAN DIEGO | State: CA | Zip: 92128 |
| Lender: LARRY KIM | |

THE APPRAISAL "INSPECTION" IS A VALUE INVENTORY AND IS NO SUBSTITUTE FOR AN ENGINEERING INSPECTION. WHILE THE APPRAISER NEITHER SEES NOR HAS BEEN TOLD OF ANY OBVIOUS DEFECT NOT OTHERWISE REPORTED, APPRAISERS ARE NOT EXPERTS IN IDENTIFICATION OF SUCH ITEMS AND THE APPRAISER RECOMMENDS THE PROPERTY HAVE AN INSPECTION BY A CERTIFIED HOME OR PROPERTY INSPECTOR AND A STRUCTURAL ENGINEER. ANY DEFERRED MAINTENANCE ISSUES NOTED SHOULD BE VERIFIED BY AN EXPERT FOR ANY REPAIR COSTS AND AS TO THE EXACT NATURE AND EXTENT OF THE REPAIR(S) NECESSARY. THIS APPRAISER IS NOT AN EXPERT IN THE FIELD OF HOME REPAIR, REMODELING OR CONSTRUCTION AND DOES NOT PRESENT HIMSELF TO BE SO. THE APPRAISER RESERVES THE RIGHT TO ALTER THIS REPORT UPON THE CLIENT PROVIDING THAT HOME OR PROPERTY INSPECTION OR STRUCTURAL INSPECTION REPORT. THE APPRAISER ASSUMES ALL STRUCTURAL, SYSTEM, OR HVAC SYSTEMS ARE IN GOOD WORKING ORDER IF NO SUCH REPORT IS PROVIDED.

THE FOLLOWING IS NOTED IN ORDER TO COMPLY WITH USPAP REPORTING REQUIREMENTS:

SUBJECT - THE SUBJECT LISTING HISTORY WAS PROVIDED BY THE MLS, REALTOR AND/OR THE OWNER. HOWEVER THERE MAY BE INSTANCES WHERE THE PROPERTY WAS PUT ON THE MARKET BY THE OWNER (I.E. NOT LISTED ON THE MLS) AND NOT DISCLOSED TO THE APPRAISER.

NEIGHBORHOOD - THE APPRAISER HAS MADE NO ATTEMPT TO MAKE DISCOVERY OF NEIGHBORHOOD INFLUENCES SUCH AS, BUT NOT LIMITED TO, REGISTERED SEX OFFENDERS, CRIMINAL ACTIVITY (SUCH AS DRUG LABS, HIGH CRIME AREAS, ETC.) OR INTERIM REHABILITATION FACILITIES/HALF-WAY HOUSES AND THAT THE CLIENT MAY DESIRE TO CHECK THIS INFORMATION FOR THEMSELVES.

SITE - THE SUBJECT IS IN AN AREA ZONED FOR SINGLE FAMILY RESIDENCES AND THE SITE IS IMPROVED WITH A SINGLE FAMILY RESIDENCE. THE HIGHEST AND BEST USE OF THE PROPERTY APPEARS TO BE AS A SINGLE FAMILY RESIDENCE. IT IS LOCATED IN AN AREA OF PREDOMINATELY SINGLE FAMILY RESIDENCES.

THE APPRAISER WAS NOT SUPPLIED WITH A SURVEY OF THE SUBJECT SITE. NO EFFORT WAS MADE TO ASCERTAIN WHETHER THE SUBJECT IS LOCATED WITHIN APPROPRIATE SETBACKS, AS DICTATED BY ZONING. THE SUBJECT SITE SIZE APPEARS TO BE IN CONFORMANCE WITH ZONING REQUIREMENTS. SHOULD THE INTENDED USER OF THIS APPRAISAL REPORT HAVE CONCERNS OVER THE SUBJECT'S LEGALITY, AN APPROPRIATE SURVEY FROM A LICENSED SURVEYOR WOULD BE RECOMMENDED.

THE APPRAISER HAS NOT CHECKED THE LAND RECORDS FOR SUBJECT RECORDED EASEMENTS AND HAS REPORTED ONLY APPARENT EASEMENTS, ENCROACHMENTS AND OTHER APPARENT ADVERSE CONDITIONS. NO ADVERSE ENVIRONMENTAL CONDITIONS WERE NOTED AT THE TIME OF INSPECTION. SEE ITEM #5 OF THE STATEMENT OF LIMITING CONDITIONS.

IMPROVEMENTS - THE SUBJECT VISUAL INVENTORY INCLUDED - VIEW EXTERIOR READILY OBSERVABLE AREAS; VIEW INTERIOR READILY AVAILABLE AREAS; VIEW SITE AROUND IMPROVEMENTS (IE. WALKED AREA ADJACENT TO THE DWELLING); OBSERVED ROOM LAYOUT/FLOOR PLAN; ASSESSED FUNCTIONAL UTILITY OF THE PROPERTY; ADDRESSED THE CONFORMITY TO THE NEIGHBORHOOD; LISTED THE AMENITIES; OBSERVED THE CONDITION OF THE PROPERTY, MEASURED THE IMPROVEMENTS.

THE SUBJECT VISUAL INVENTORY DID NOT INCLUDE - OBSERVATION OF THE ATTIC (IF ANY); OBSERVATION OF THE CRAWL SPACE (IF ANY); ACTIVATION AND/OR TESTING OF MECHANICAL SYSTEMS (INCLUDING WELL AND SEPTIC, IF APPLICABLE); REPORTING OF PERSONAL PROPERTY (IE. ANYTHING NOT BUILT IN); ANYTHING THAT IS NOT READILY OBSERVABLE OR ACCESSIBLE; FULL SITE INSPECTION, INCLUDING ENVIRONMENT ASSESSMENT; MOLD ASSESSMENT; ROOF CONDITION REPORT BEYOND AN OBSERVATION BASED ON VISUAL FROM GROUND LEVEL; RADON ASSESSMENT; HAZARDOUS WASTE ASSESSMENT.

THE APPRAISER IS NOT COMPETENT TO MAKE A JUDGEMENT ABOUT THE CONDITION RELATING TO THE FOUNDATION, ROOF, EXTERIOR WALLS, ETC. THE APPRAISER HAS MADE A VISUAL OBSERVATION OF THE EXTERIOR SURFACES FROM THE GROUND LEVEL, AND THE REPORTED CONDITIONS ONLY REFLECT THE APPARENT SURFACE CONDITION. IF THE CLIENT HAS CONCERNS REGARDING THE CONDITION OF THESE ITEMS, AN INSPECTION BY A QUALIFIED PARTY WOULD BE HIGHLY RECOMMENDED.

DISINTERESTED THIRD PARTY VERIFICATION OF ALL INFORMATION - ALL SUBJECT AND COMPARABLE SALES INFORMATION (BOTH CURRENT AND PREVIOUS) WAS OBTAINED FROM A COMBINATION OF SOURCES. THE SUBJECT PROPERTY SALES COMPARABLE PROFILES WERE OBTAINED FROM THE COUNTY RECORDS (PROVIDED BY REALIST.COM). THE COUNTY RECORDS INFORMATION PROVIDERS ARE CONSIDERED DISINTERESTED PARTIES. ALL OTHER INFORMATION WAS OBTAINED FROM PROPERTY LISTINGS PROVIDED BY THEY SAN DIEGO MULTIPLE LISTING SERVICE (MLS). THE PROPERTY LISTINGS WERE PREPARED BY THE LISTING REPRESENTATIVES, "INTERESTED PARTIES." THE INTERIOR INFORMATION ON THE CLOSED COMPARABLE SALES WAS ONLY AVAILABLE FROM THE MLS LISTING. THIS APPRAISER WAS UNABLE TO LOCATE A DISINTERESTED THIRD PARTY TO VERIFY THE MLS COMPARABLES INTERIOR INFORMATION.

COST APPROACH - REPLACEMENT COSTS USED IN THE COST APPROACH WERE USED FOR VALUATION PROPOSES ONLY. NO ONE, CLIENT OR THIRD PARTY, SHOULD RELY ON THESE FIGURES FOR INSURANCE PURPOSES. THE DEFINITION OF 'MARKET VALUE' ON PAGE 4 OF THIS APPRAISAL REPORT IS NOT CONSISTENT WITH 'INSURABLE VALUE.'

FINAL RECONCILIATION - I HAVE CONSIDERED THE COST AND INCOME APPROACHES TO VALUE. THE INCOME APPROACH IS NOT DEEMED TO BE APPLICABLE TO THIS ASSIGNMENT DUE TO THE DEARTH OF RENTAL INFORMATION IN THIS LOCATION. THE COST APPROACH WAS DEEMED TO BE APPLICABLE TO THIS ASSIGNMENT. IT IS SUPPORTIVE.

ADEQUACY OF SCOPE - THE APPRAISER HAS PROPOSED AND THE CLIENT HAS AGREED (PRIOR TO SUBMISSION) THAT THE LEVEL OF DEVELOPMENT AND REPORTING DETAILED ABOVE IS SUFFICIENT TO ADDRESS THE SUBSTANTIATIVE CRITERIA OF A REASONABLE SCOPE OF WORK WITHIN THE CONTEXT OF THE INTENDED USERS AND INTENDED USE. WITH THE EXCEPTION OF REVISIONS MADE FOR THE PURPOSE OF CORRECTION OF ANY ERRORS, THE APPRAISER DOES NOT ANTICIPATE FURTHER DEVELOPMENT OR REPORTING REQUIREMENTS FOR THIS ASSIGNMENT. ANY ADDITIONAL REQUESTS FROM THE CLIENT OR ANY THIRD PARTIES MAY REPRESENT A CHANGE IN THE ASSIGNMENT CONDITIONS AND REQUIRE THE DEVELOPMENT OF A NEW ASSIGNMENT. WITH THE EXCEPTION OF CORRECTIONS OF ANY ERRORS OR OMISSIONS, ANY ADDITIONAL REQUESTS MUST BE MADE IN WRITING AND MAY BE SUBJECT TO ADDITIONAL BILLING TO RECOVER THE COSTS ASSOCIATED WITH THE ADDITIONAL WORK.

INTENDED USE - THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT AND IT'S ASSIGNS. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL REPORT FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THE APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY

ADDENDUM

| Borrower: NONE | File No.: 070111COOLLAKE |
|---|---|
| Property Address: 13464 COOL LAKE WAY | Case No.: |
| City: SAN DIEGO | State: CA | Zip: 92128 |
| Lender: LARRY KIM | |

THE APPRAISER.

THIS REPORT IS NOT TO BE RELIED UPON FOR ANY OTHER PURPOSE, WHATSOEVER.  NO OTHER UNNAMED THIRD PARTIES ARE AUTHORIZED TO USE THIS REPORT WITHOUT THE EXPRESSED WRITTEN CONSENT OF THE APPRAISER.

COMMENTS ON SALES COMPARISON -

SUBJECT

THE SUBJECT IS A GOOD SIZED HOME ON A GOOD SIZED LOT. IT IS OF AVERAGE  QUALITY AND IS IN AVERAGE CONDITION. IT HAS A 2 CAR GARAGE, FIREPLACE, AND PATIO AREA.

COMPARABLES

AFTER A THOROUGH SEARCH OF THE MARKET AREA, THE COMPARABLES ARE MOST COMPARABLE WITH THE SUBJECT. THE COMPARABLES ARE IN CLOSE PROXIMITY TO THE SUBJECT AND ARE LOCATED WITHIN THE SAME ZIP CODE.
SOME FILE PHOTO'S MAY HAVE BEEN USED IN ORDER TO AVOID PEOPLE OR CHILDREN OR DUE TO LIMITED ACCESS.
ALL COMPARABLES ARE IN THE SAME NEIGHBORHOOD AND WOULD BE CONSIDERED BY PROSPECTIVE BUYERS.
ADJUSTMENTS - LIVEABLE SF - $40 FOR VARIANCES OVER 100 SF, LOT SIZES $1 PER SQUARE FOOT. BEDROOMS AT $8,000 EACH ( NO BEDROOM ADJUSTMENTS GREATER THAN 4 BEDROOMS WERE GIVEN AS THE MARKET WOULD NOT RECOGNIZE SUCH AN ADJUSTMENT ). GARAGE - $6,000 PER GARAGE. CENTRAL A/C - $3,000. BATHROOM - $6,000. HALF BATH - $3,000. FIREPLACE - $1,500. POOL - $10,000. BONUS ROOM - $5,000

COMPARABLE ONE

COMPARABLE ONE IS A SIMILAR SIZED HOME ON A SIMILAR SIZED LOT. IT IS OF SIMILAR QUALITY AND IS IN SIMILAR CONDITION. IT HAS A 2 CAR GARAGE, CENTRAL A/C, FIREPLACE, PATIO AND POOL. THE SALES AGENT REPORTS A SHORT SALE WITH 3% PAID IN CONCESSIONS.

COMPARABLE TWO

COMPARABLE TWO IS A SLIGHTLY LARGER SIZED HOME ON A SIMILAR SIZED LOT. IT IS OF SIMILAR QUALITY AND IS IN SIMILAR CONDITION. IT HAS A 2 CAR GARAGE, CENTRAL A/C, FIREPLACE, PATIO AND ONE HALF BATH MORE THAN THE SUBJECT. THE SALES AGENT REPORTS NO CONCESSIONS PAID.

COMPARABLE THREE

COMPARABLE THREE IS A SLIGHTLY LARGER SIZED HOME ON A SIMILAR SIZED LOT. IT IS OF SUPERIOR QUALITY ( MORE UPGRADING ) AND IS IN GOOD CONDITION. IT HAS A 2 CAR GARAGE, CENTRAL A/C, FIREPLACE AND PATIO. THE SALES AGENT REPORTS A TRADITIONAL SALE WITH NO CONCESSIONS PAID.

COMPARABLE FOUR

COMPARABLE FOUR IS A CONTINGENT LISTING PRICED AT $499,000. IT IS A SLIGHTLY LARGER SIZED HOME ON A SMALLER SIZED LOT. IT IS OF SLIGHTLY SUPERIOR QUALITY ( MORE UPGRADING ) AND IS IN GOOD CONDITION. IT HAS A 2 CAR GARAGE, CENTRAL A/C, FIREPLACE AND PATIO.THE SALES AGENT REPORTS A SHORT SALE.

RECONCILIATION

CONDITION OF APPRAISAL

THE PURPOSE OF THE APPRAISAL IS TO DETERMINE MARKET VALUE - FOR BANKRUPTCY PURPOSES AS OF JULY 1, 2011.

FINAL RECONCILIATION OF VALUE -

THE FINAL ESTIMATE OF VALUE AS OF JULY 1, 2011  WAS $510,000 ( ON A CASH OR EQUIVALENT BASIS ).

NO PERSONAL PROPERTY WAS GIVEN ANY CONSIDERATION IN THE ESTIMATED VALUE OF THE SUBJECT.

**Neighborhood Market Conditions**
PROPERTY VALUES IN THIS NEIGHBORHOOD TEND TO REFLECT A STABLE BASE. SUPPLY AND DEMAND ARE IN BALANCE. CONVENTIONAL AND FHA FINANCING IS PREVALENT IN THE CURRENT MARKETPLACE. ACCORDING TO CURRENT MARKET DATA, PROPERTIES IN THE NEIGHBORHOOD HAVE A 2-6 MONTH MARKETING TIME WHEN LISTED WITHIN 7 TO 9% OF THE MARKET.
WITHIN A 1 MILE SEARCH OF THE SUBJECT WITH A GROSS LIVING AREA WITHIN 20%, IT WAS NOTED AS PER MLS THAT THERE ARE 1 CURRENT ACTIVE LISTINGS . THERE IS 1 PENDING LISTINGS UNDER CONTRACT WITH A SATURATION RATE OF 0 SALES IN PAST 60 DAYS.
AS PER DATAQUICK FOR THE SUBJECT'S ZIP CODE FOR THE PAST SIX MONTHS OF THE MEDIAN SINGLE FAMILY RESALE VALUE CHANGE AS FOLLOWS:

MAY +1.59%
APRIL -1.0%
MARCH +2.9%
FEBRUARY -16.20%
JANUARY +4.08%
DECEMBER +0.6%

THE AREA KNOW AS RANCHO BERNARDO/ SAN DIEGO DISPLAYS SIMILAR OVERALL STABLE VALUES AT THIS TIME.

SUBJECT PROPERTY PHOTO ADDENDUM

| | | | |
|---|---|---|---|
| Borrower: NONE | | File No.:   070111COOLLAKE | |
| Property Address: 13464 COOL LAKE WAY | | Case No.: | |
| City: SAN DIEGO | State: CA | Case No.: | Zip: 92128 |
| Lender: LARRY KIM | | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: JULY 1, 2011
Appraised Value: $ 510,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

LL APPRAISAL SERVICES

| Borrower: NONE | | File No.:   070111COOLLAKE | |
|---|---|---|---|
| Property Address: 13464 COOL LAKE WAY | | Case No.: | |
| City: SAN DIEGO | State: CA | Zip: 92128 | |
| Lender: LARRY KIM | | | |



BATH



KITCHEN



MAIN LIVING AREA



BEDROOM



BATH



DINING

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: NONE | | | File No.: 070111COOLLAKE | |
|---|---|---|---|---|
| Property Address: 13464 COOL LAKE WAY | | | Case No.: | |
| City: SAN DIEGO | | State: CA | | Zip: 92128 |
| Lender: LARRY KIM | | | | |



**COMPARABLE SALE #1**

11131 MORNING CREEK DR N
SAN DIEGO, CA, 92128
Sale Date: 03/08/2011
Sale Price: $ 480,000



**COMPARABLE SALE #2**

11039 TWIN POND TER
SAN DIEGO, CA, 92128
Sale Date: 01/14/2011
Sale Price: $ 520,000



**COMPARABLE SALE #3**

10993 COLD SPRINGS CT
SAN DIEGO, CA, 92128
Sale Date: 04/11/2011
Sale Price: $ 535,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: NONE | | File No.:   070111COOLLAKE | |
|---|---|---|---|
| Property Address: 13464 COOL LAKE WAY | | Case No.: | |
| City: SAN DIEGO | State: CA | | Zip: 92128 |
| Lender: LARRY KIM | | | |



**COMPARABLE SALE #4**

14034 STONEY GATE PL
SAN DIEGO, CA, 92128
Sale Date: CONTINGENT
Sale Price: $ 499,000

**COMPARABLE SALE #5**

Sale Date:
Sale Price: $

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

**FLOORPLAN**

| | |
|---|---|
| Borrower: NONE | File No.: 070111COOLLAKE |
| Property Address: 13464 COOL LAKE WAY | Case No.: |
| City: SAN DIEGO State: CA | Zip: 92128 |
| Lender: LARRY KIM | |



Sketch by Apex Medina™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 769.0 | 769.0 |
| GLA2 | Second Floor | 999.0 | 999.0 |
| GAR | Garage | 400.0 | 400.0 |
| | Net LIVABLE Area | (rounded) | 1768 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 26.0 x 10.0 | | 260.0 |
| 2.0 x 5.0 | | 10.0 |
| 1.0 x 20.0 | | 20.0 |
| 11.0 x 29.0 | | 319.0 |
| 10.0 x 16.0 | | 160.0 |
| Second Floor | | |
| 19.0 x 4.0 | | 76.0 |
| 4.0 x 14.0 | | 56.0 |
| 31.0 x 23.0 | | 713.0 |
| 7.0 x 22.0 | | 154.0 |
| 9 Items | (rounded) | 1768 |

## PLAT MAP

| | | |
|---|---|---|
| Borrower: NONE | | File No.: 070111COOLLAKE |
| Property Address: 13464 COOL LAKE WAY | | Case No.: |
| City: SAN DIEGO | State: CA | Zip: 92128 |
| Lender: LARRY KIM | | |



LLUTTON@SAN.RR.COM

LOCATION MAP

| Borrower: NONE | | File No.: 070111COOLLAKE |
|---|---|---|
| Property Address: 13464 COOL LAKE WAY | | Case No.: |
| City: SAN DIEGO | State: CA | Zip: 92128 |
| Lender: LARRY KIM | | |



Comparable Sale 4
14034 Stoney Gate Pl
San Diego, CA 92128-4250
(0.90 miles NE)

Subject
13464 Cool Lake Way
San Diego, CA 92128-4008

Comparable Sale 1
11131 Morning Creek Dr N
San Diego, CA 92128-4027
(0.24 miles SSE)

Comparable Sale 3
10993 Cold Springs Ct
San Diego, CA 92128-4089
(0.24 miles S)

Comparable Sale 2
11039 Twin Pond Terr
San Diego, CA 92128
(0.27 miles SSE)

LL APPRAISAL SERVICES

| Borrower: NONE | | File No.: 070111COOLLAKE |
|---|---|---|
| Property Address: 13464 COOL LAKE WAY | | Case No.: |
| City: SAN DIEGO | State: CA | Zip: 92128 |
| Lender: LARRY KIM | | |



| Borrower NONE | | | File No. 070111COOLLAKE |
|---|---|---|---|
| Property Address 13464 COOL LAKE WAY | | | |
| City SAN DIEGO | County SAN DIEGO | State CA | Zip Code 92128 |
| Lender LARRY KIM | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Appraisal Report is one of the following types:**

☐ Self Contained   (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ Summary   (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Use   (A written report prepared under Standards Rule 2-2(c), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

• The statements of fact contained in this report are true and correct.

• The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

• I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

• I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

• My engagement in this assignment was not contingent upon developing or reporting predetermined results.

• My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

• My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

• I have (or have not) made a personal inspection of the property that is the subject of this report.

• No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this certification.)

### Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: LAURIE LUTTON | Name: |
| Date Signed: 07/01/2011 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: AL039652 | or State License #: |
| State: CA | State: CA |
| Expiration Date of Certification or License: 02/29/2012 | Expiration Date of Certification or License: |
|  | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: JULY 1, 2011 | ☐ Did Not   ☐ Exterior-only from street   ☐ Interior and Exterior |

B6D (Official Form 6D) (12/07)

In re    **Larry Jinuk Kim,**            Case No.    **11-07381**
         **Young Hee Kim**

Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **Bank of America** PO Box 37176 San Francisco, CA 94137 | | C | 2005 1st SFD located at 13464 Cool Lake Way, Poway, CA. 92128 | | | | | |
| | | | Value $    504,000.00 | | | | 548,000.00 | 44,000.00 |
| Account No. **Bank of America** PO Box 30750 Los Angeles, CA 90030-0750 | | C | 2007 2nd DOT SFD located at 13464 Cool Lake Way, Poway, CA. 92128 | | | | | |
| | | | Value $    504,000.00 | | | | 160,000.00 | 160,000.00 |
| Account No. Sabre Springs Neighborhood HOA c/o Judge Law Firm 19900 MacArthur Blvd. #500 Irvine, CA 92612 | | C | SFD located at 13464 Cool Lake Way, Poway, CA. 92128 | | | | | |
| | | | Value $    504,000.00 | | | | 2,500.00 | 2,500.00 |
| Account No. San Diego Co. C.U. PO Box 269040 San Diego, CA 92196 | | C | pmsi 2005 Acura | | | | | |
| | | | Value $    7,000.00 | | | | 2,000.00 | 0.00 |
| 1   continuation sheets attached | | | Subtotal (Total of this page) | | | | 712,500.00 | 206,500.00 |

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                Best Case Bankruptcy

B 10 (Official Form 10) (04/10)

Case 11-07381-MM13    Filed 3... Entered ... Doc ... Desk Main Document    Pg ... of ...

| UNITED STATES BANKRUPTCY COURT    FOR THE SOUTHERN DISTRICT OF CALIFORNIA SAN DIEGO DIVISION | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Larry Jinuk Kim and Young Hee Kim | | Case Number:11-07381-MMM |

| NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.* |
|---|

| Name of Creditor (the person or other entity to whom the debtor owes money or property): <br> Bank of America, N.A. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: <br> Bank of America, N.A. <br> P.O. Box 26012, NC4-105-02-99 <br> Greensboro, North Carolina 27420 | **Court Claim Number:**_____ <br> (*If known*) <br><br> Filed on: |
| Name and address where payment should be sent (if different from above): <br> Bank of America, N.A. <br> Bankruptcy Department <br> P.O. Box 26012, NC4-105-02-99 <br> Greensboro, North Carolina 27420 <br><br> Telephone Number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br> ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:  $158,430.69 <br><br> If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. <br><br> If all or part of your claim is entitled to priority, complete item 5. <br><br> ☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** <br><br> Specify the priority of the claim. |
|---|---|
| 2. **Basis for Claim:** Money Loaned <br> (See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. **Last four digits of any number by which creditor identifies debtor:** xxxxxxxxxx3199 <br><br>     3a. Debtor may have scheduled account as: _____ <br>         (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. **Secured Claim** (See instruction #4 on reverse side.) <br> Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. <br><br> **Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other: _____ <br> **Describe:** 13464 Cool Lake Way, San Diego, California  92128 <br><br> **Value of Property:**  N/A       **Annual Interest Rate:** <br><br> **Amount of arrearage and other charges** as of time case filed included in secured claim, <br><br> if any: $70.00     **Basis for perfection:** Recordation of Lien <br><br> **Amount of Secured Claim:**  $158,430.69     **Amount Unsecured:**     $0.00 | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). <br><br> ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). <br><br> ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. <br> 7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) <br><br> DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. <br> If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). <br><br> **Amount entitled to priority:** <br><br> *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date: <br> *May 24, 2011* | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. <br><br> /s/ Lawrence J. Buckley as Creditor's Authorized Agent    P. O. Box 829009 <br> 972.643.6600                              Dallas, Texas 75382-9009 | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Chapter 13 Plan (Recommended Form)

In re:   Larry Jinuk Kim
         Young Hee Kim

Case # 11-07381 MM 13

Original Plan dated May 16, 2011

CREDITORS: YOU SHOULD READ THIS PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT MAY MODIFY YOUR RIGHTS IN SEVERAL WAYS INCLUDING PROVIDING FOR PAYMENT OF LESS THAN THE FULL AMOUNT OF YOUR CLAIM, SETTING THE VALUE OF THE COLLATERAL SECURING YOUR CLAIM, AND SETTING THE INTEREST RATE ON YOUR CLAIM.

1.      **Plan Payments.** There shall be paid to the Chapter 13 Trustee the amount of_____ **$926.00**_____ each month by debtor(s), or any entity from whom debtor(s) receive income, in such installments as agreed upon with the Trustee, for payment of all existing debts of debtor(s) pursuant to this Plan, except as the Court may otherwise order. Payments from debtor(s) shall begin within 30 days of filing the petition or conversion order. Debtor(s) submit all future income to the supervision and control of the Trustee during this case and agree to pay sufficient funds to the Trustee on or before five years from commencement of this case to fully complete this Plan.

2.      **Pre-confirmation Adequate Protection Payments.** If direct payments to creditors pursuant to §1326(a) are made, debtor will immediately provide trustee evidence of the payments including the creditor name and address and the amount and date of each payment. Trustee is under no obligation to adjust filed and allowed claims unless there is a court order or specific written direction from the claimant.

3.      **Administrative Claims.** Trustee will pay allowed administrative claims and expenses in full pursuant to §1326(b) as set forth below unless the holder of such claim has agreed to a different treatment of its claim:

        (A). Trustees Fees: The Chapter 13 Trustee shall receive a fee at the time of each disbursement, the percentage of which is set by the United States Trustee.

        (B). Debtor's Attorney Fees: Debtor's attorney shall be paid after creditors listed in paragraph 7 except as checked below:

        _XX_ Attorney fees to be paid in full prior to other claims. (Do not check this option if lease payments/adequate protection        payments are necessary).

        _____ Attorney fees to be paid at the rate of $_____ per month prior to other claims. (If no amount is filled in        attorney will be paid after creditors listed in paragraph 7).

        (C). Except as ordered by the court, other §1326(b) claims will be paid in installments as set by the trustee in advance of other claims. All other claims entitled to priority and post petition claims allowed by law shall be paid in full by deferred payments in such priority and installments as the trustee in his discretion deems appropriate, unless this plan specifically provides otherwise.

4.      **Specified Leases, Personal Property (Trustee to pay).** Debtor(s) elect to assume the existing lease of personal property with the below named creditors:

        (A). REGULAR LEASE PAYMENTS: After payments provided in prior paragraphs, trustee shall make distribution to named lease creditors in the installment specified from funds available for distribution monthly until claim is paid in the amount allowed. Any option to purchase or any        payments under a carry-over provision shall be paid by debtor(s) directly.

        (B). ARREARS LEASE PAYMENTS: After the regular monthly lease payment above, trustee shall pay any lease arrears to named lease creditors in the installment specified from funds available monthly until claim is paid in the amount allowed.

| Name of Creditor | Regular Monthly Payment Installment | Estimated Arrears | Arrears Installment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

Revised 9/05

Case Number: 11-07381-MM13

5. **Specified Secured Claims, Personal Property.** After payments provided for by prior paragraphs, Trustee shall make payment to creditors (their agents and assigns) named in this paragraph whose claims are allowed secured solely by personal property. Each named creditor shall be paid in installments from funds available for distribution monthly, non-cumulative, as indicated until claim is paid in full for allowed claims secured plus interest at seven percent (7%) per annum unless a different percentage is specified below. The balance of the claim shall be treated as unsecured. **Upon confirmation, creditor will be deemed to accept the classification, valuation and interest rate set forth and payment pursuant to this provision will be binding, even if creditor is not subject to §506 valuation, unless creditor timely objects and the court orders otherwise.**

| Name of Creditor | Allowed Secured Value | Installment | (Optional) % Interest |
|---|---|---|---|
| San Diego County Credit Union (Acura) | $7,000.00 | $150.00 | |
| San Diego County Credit Union (BMW) | $7,000.00 | $150.00 | |
| Wells Fargo | $9,000.00 | $200.00 | |

6. **Specified Secured Claims, personal Property (§506 valuation not applicable) (purchase money security interest in vehicles purchased for personal use within 910 days of filing the petition or other secured debt within one year of filing the petition).** Creditors named in this paragraph shall be paid in the same priority as creditors listed in paragraph 5 above but in full for allowed claims secured solely by personal property for which §506 valuation is not applicable. Each named creditor shall be paid in installments from funds available for distribution monthly, non-cumulative, as indicated until claim is paid in amount allowed plus interest at seven percent (7%) per annum unless a different percentage is specified below. **Upon confirmation, the interest rate set forth will be binding unless creditor timely objects and the court orders otherwise.**

| Name of Creditor | Estimated Claim | Installment | (Optional) % Interest |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

7. **Domestic Support Obligations.** After payments provided for in prior paragraphs, allowed claims for a domestic support obligation as defined by §507(a)(1), shall be paid, as to amounts due and payable at the commencement of the case, in full 100% to those creditors named below in installments from funds available for distribution monthly, non-cumulative, as indicated until claim is paid in amount allowed without interest unless an optional interest percentage is specified below. Holders of claims for domestic support obligations, other than creditors specifically named will be paid as indicated in paragraph 3 of this plan. Post-petition support shall be paid by the debtor directly to support creditors as such payments become due and payable.

| Name of Creditor | Estimated Arrears | Installment | (Optional) % Interest |
|---|---|---|---|
| | | | |
| | | | |

**Assigned Domestic Support Obligations not to be paid in full.** If debtor's projected disposable income for a period of five years will be applied to make payments under the plan, debtor may provide for less than full payment to assigned Domestic Support Obligations (DSOs) defined in §507(a)(1)(B). Although the unpaid DSOs remain nondischargable, after creditors provided for in prior paragraphs, debtor proposes to pay the below named assigned DSO creditors on their filed and allowed claims in installments from funds available for distribution monthly, non-cumulative, as indicated until the equivalent of 60 months of projected disposable income has been paid into the plan for distribution to creditors. If there are any remaining funds after payment to other creditors pursuant to the plan, those funds may be paid to any creditor in this paragraph whose claim is not paid in full.

| Name of Creditor | Estimated Claim | Installment |
|---|---|---|
| | | |

Case Number: 11-07381-MM13

8.    **Secured Co-debtor claims.**    After payments provided for by prior paragraphs, creditors (their agents and assigns) named in this paragraph who have allowed claims secured by personal property with a co-debtor liable thereon, shall be paid by the trustee 100% of the claim as allowed plus interest at the contract rate (if clearly specified in the claim) in installments as indicated. Installments are to be paid from funds available for distribution monthly non-cumulative. If no contract rate of interest is clearly specified in the claim, pay the interest rate specified below or if none specified, pay 12% A. P. R. interest.

| Name of Creditor | Installment | (Optional) % Interest |
|---|---|---|
| | | |

9.    **Real Estate or Mobile Homes (Trustee to pay arrears only).**    Notwithstanding any other provision of this plan, during this case and following completion of this case, debtors shall make the usual and regular payments (including any balloon payments) called for by any security agreements supporting non-voidable liens against debtor's real estate or mobile home, directly to lien holders in a current manner. However, arrears to named lien holders (their agents and assigns) shall be paid in installments by Trustee from funds available for distribution monthly, non-cumulative, and except for creditors paid pursuant to prior paragraphs of this plan, shall be paid in advance of periodic distribution to other creditors. Each named creditor shall be paid in installments indicated until arrears claim is paid in amount allowed plus interest at seven percent (7%) per annum, unless a different percentage is specified below.

Provisions of this paragraph shall operate to cure any default of any real estate or mobile home security agreement notwithstanding that by the terms thereof or by the laws or processes of a governmental unit the time for redemption or reinstatement has expired. If there exist creditors not dealt with by this plan holding statutory or other liens against debtor's real estate or mobile home and the obligation is fully due, for reasons other than the exercise of power of acceleration for failure to make installment payments, unless the Court orders otherwise, debtor(s) will pay said claim directly to said creditor in full on or before six months time following the date of confirmation of this Plan. Unless otherwise specifically provided for elsewhere in the plan, secured tax claims shall be paid as though secured only by personal property even if also secured by real property.

| Name of Creditor | Estimated Arrears | Installment | (Optional) % Interest |
|---|---|---|---|
| Bank of America | $27,884.00 | $400.00 | |
| (Loan Modification in progress) | | | |

10.    **Real Estate or Mobile Home (Trustee to pay entire claim).**    Notwithstanding any other provisions of this plan, the below named creditors (their agents and assigns) who have security agreements supporting non-voidable liens against debtor's real estate or mobile home or are cross-collateralized shall be paid in installments by Trustee from funds available for distribution monthly, non-cumulative, and except for creditors paid pursuant to prior paragraphs of this plan shall be paid on their allowed claims in advance of periodic distribution to other creditors. Each named creditor shall be paid in installments as indicated until the allowed secured claim is paid 100% plus interest at seven percent (7%) per annum, unless a different percentage is specified below.

| Name of Creditor | Estimated Claim | Installment | (Optional) % Interest |
|---|---|---|---|
| | | | |
| | | | |

Revised 9/05

Page 3 of 5

Case Number: 11-07381-MM13

11.   **Other secured personal property creditors and lease creditors.**   After payments provided for in prior paragraphs, Trustee shall pay holders of other claims allowed secured solely by personal property. Any creditor holding a lease on personal property in debtor's possession with a filed and allowed claim, unless specifically dealt with elsewhere in this plan, shall be treated as a secured creditor herein. All claims pursuant to this paragraph shall be paid pro-rata with other such creditors to the amount allowed plus interest at seven percent (7%) per annum unless a different percentage is specified below and in advance of distribution to general unsecured creditors:

(Optional) % interest: _____

12.   **Unsecured co-debtor claims.**   After payments provided for by prior paragraphs, creditors (their agents and assigns) named in this paragraph who have allowed unsecured claims with a co-debtor liable thereon, shall be paid by the trustee 100% of the claim as allowed plus interest at the contract rate (if clearly specified in the claim) in installments as indicated. Installments are to be paid from funds available for distribution monthly non-cumulative. If no contract rate of interest is clearly specified in the claim, pay the interest rate specified below or if none specified, pay 12% A.P.R. interest.

| Name of Creditor | Installment | (Optional) % Interest |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

13.   **Non-priority Unsecured Claims.**   After dividends to all other creditors pursuant to the plan, trustee may pay dividends pro-rata to claims allowed unsecured. Unsecured non-priority creditors will receive:

_____0_____% or a pro-rata share of $_____, **whichever is greater.** (The dollar amount is the greater of (1) the non-exempt assets or (2) the applicable commitment period of 36 or 60 months multiplied by debtor's projected disposable income). If both the percentage and dollar amount are left blank, trustee is to pay 100% to unsecured creditors. If the percentage is left blank, trustee will pay the dollar amount to unsecured creditors. If the percentage is filled in at less than 100% and the dollar amount is left blank, trustee is authorized to increase the percentage if necessary to comply with the required applicable commitment calculation.

14.   **Special Unsecured Claims.**   Notwithstanding any other provision of the plan, creditors named in this paragraph shall be paid as an unsecured claim but in full 100% of the claim amount allowed [Debtors represent compliance with section §1322(b)(1)].

Name of Creditor                                  Optional interest rate

_____        _____

15.   **Exclusion of creditor.**   Notwithstanding any other provision of the plan, debtor(s) elect to assume the existing lease or contract with creditors in this paragraph. These named creditors shall not be dealt with or provided for by this plan. All pre-petition and post-petition payments due to listed creditors, including defaults, shall be disallowed as claims for payment herein, unless agreed upon by the Trustee with notice and an opportunity to object by Debtor.

Name of Creditor                                  Collateral

_____        _____

Revised 9/05                          Page 4 of 5

Case Number: 11-07381-MM13

16.    **Rejection of Claim, Return of Collateral.**   Debtor(s) elect not to assume the lease or contract with creditors (their agents and assigns) named in this paragraph and shall surrender to such creditor the collateral subject to creditor's lien or lease in full satisfaction of any secured claim arising from the transaction creating creditor's interest in said property.

Name of Creditor                                                          Collateral

17.    **Post-Petition Claims.**   Claims allowed for post-petition debts incurred by debtor(s) may be paid in full 100% of the claim in such order and on such terms as the Trustee, in his sole discretion, may determine. Trustee or any adversely affected party in interest may file to dismiss case if debtor(s) incur post-petition debts without the written consent of Trustee and debtor(s) fail to make sufficient payments to keep such obligations current.

18.    **General Provisions.**   Post-Petition earnings while this case is pending shall remain property of the estate and shall not vest in the debtor notwithstanding §1327. Any remaining funds held by the Trustee after dismissal or conversion of a confirmed case may be distributed to creditors pursuant to these Plan provisions. Pursuant to §1322(b)(3), Trustee shall have the power to waive, in writing and on such conditions as the Trustee may impose, any default in debtor's payment to Trustee under this Plan. Any tax refunds or other funds sent to the debtor(s) in care of the Trustee during this case may be deposited to debtor(s) account and disbursed to creditors pursuant to the plan.

Upon confirmation the value of the debtor's residence located at 13464 Cool Lake Way, Poway, CA. 92128 shall be deemed $506,000.00. Failure by any creditor to object to this Chapter 13 Plan shall be deemed to be consent to the proposed valuation of the debtor's residence.

A hearing to determine the value of the Debtor's residence pursuant to 11 U.S.C. 506 (a) will take place prior to confirmation of the Plan. Upon confirmation, any claim submitted by Bank of America or its assignees arising from a second deed of trust against this subject property shall be deemed to be wholly unsecured.

*Special Note: This plan is intended as an exact copy of the Chapter 13 (recommended form) plan revised 9/05, except as to any added paragraphs after paragraph 18 above. The trustee shall be held harmless from any changes in this plan from the recommended plan dated 9/05.*

Plan Dated: _May 16, 2011
**( DATE IS MANDATORY )**

Debtor: _/s/ Larry Jinuk Kim_____

Joint Debtor: /s/ Young Hee Kim_____